UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                                                               Case No: 6:14-bk-6622-CCJ
LORENZO JUNIOR MARSHALL,                                        Chapter 13
    Debtor.
_____/

**NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING**

    Pursuant to Local Rule 2002-4, the Court will consider this motion, objection, or other matter without further notice or hearing unless a party in interest files a response within 21 days from the date set forth on the proof of service attached to this paper plus an additional three days for service. If you object to the relief requested in this paper, you must file your response with the Clerk of the Court at 400 West Washington Street, Suite 5100, Orlando, FL  32801, and serve a copy on the movant's attorney, BransonLaw, PLLC, 1501 East Concord Street, Orlando, Florida 32803, and any other appropriate persons within the time allowed.

    If you file and serve a response within the time permitted, the Court may schedule and notify you of a hearing, or the Court may consider the response and may grant or deny the relief requested without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

## MOTION TO MODIFY MORTGAGE-FINAL
(Re: 2764 Cabernet Circle, Ocoee, Florida 34761; loan #***3534)

Comes now the Debtor, by and through Counsel undersigned, and files this Motion to Modify Mortgage-Final, and in support thereof would state as follows:

1. The Debtor had sought a mortgage modification with SunTrust Mortgage, Inc. ("SunTrust").

2. SunTrust has offered the Debtor a loan modification and the Debtor has accepted the terms, as set forth in the attached Loan Modification Agreement.

3. The modified payment is $4,006.98, of which $3,490.42 is principal and interest and the balance includes escrow for taxes and insurance, and shall begin on June 1, 2015.

4. The "Unpaid Principal Balance" on the note is $474,552.68, which shall be amortized as set forth below:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal & Interest Payment | Estimated Monthly Escrow Payment* | Total Monthly Payment* | Payment Begins on | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-maturity | 6.750% | 05/01/2015 | $3,490.42 | $516.56* | $4,006.98* | 06/01/2015 | 258 |

*adjusts periodically

5. The "Unpaid Principal Balance" and any other amounts still owed according to the terms of the Loan Modification Agreement, shall be due and payable in full by the earliest of 1) the sale or transfer of any of Debtor's interest in the property subject to the mortgage, 2) the date Debtor pays the entire "Unpaid Principal Balance", or 3) the "Maturity Date" of November 1, 2036.

6. The modification agreement should be filed in the public records of Orange County, Florida.

7. Payments to the Chapter 13 Trustee constitute timely payments to SunTrust.

8. The payments should be sent to the following address: SunTrust Mortgage, Inc., 1001 Semmes Avenue, Richmond, Virginia 23224.

WHEREFORE, Debtor requests this Honorable Court for its Order to Approve the Loan Modification Agreement, to direct SunTrust to record the agreement with Orange County, Florida, to order that payments to the Chapter 13 Trustee constitute timely payments to SunTrust, and grant such other relief that may be deemed just and proper in the circumstances.

/s/ Robert B. Branson
_____
Robert B. Branson, Esquire

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:  
LORENZO JUNIOR MARSHALL,  
    Debtor.  
_____/

Case No: 6:14-bk-6622-CCJ  
Chapter 13

**CERTIFICATE OF SERVICE**

    A true and correct copy of the foregoing has been sent by either electronic transmission or U.S. Mail this 20th day of March, 2015, to: Laurie K. Weatherford, Trustee, PO Box 3450, Winter Park, FL 32790; Debtor; SunTrust Mortgage, Inc., c/o Cynthia M. Talton, Esquire, Ronald R. Wolfe & Associates, PL, PO Box 25018, Tampa, Florida 33622-5018; Paul L. Urich, 1510 East Colonial Drive, Suite 204, Orlando, Florida 32803.

/s/ Robert B. Branson
_____
Robert B. Branson, Esquire
Florida Bar No.: 800988
E-mail: *robert@bransonlaw.com*
**BransonLaw PLLC**
1501 E. Concord Street
Orlando, Florida 32803
Telephone: (407) 894-6834
Facsimile: (407) 894-8559

RETURN RECORDED DOCUMENT TO:
SunTrust Mortgage, Inc.
Loss Mitigation, RVW 3054
1001 Semmes Avenue
Richmond, VA 23224
Prepared By: KEYRON SCOTT

_____ [Space Above This Line For Recording Data] _____

**INVESTOR LOAN#**     3534                                                    **LOAN#**     3534

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 10TH day of **MARCH, 2015**, between **LORENZO J MARSHALL, A MARRIED MAN JOINED BY HIS WIFE LAVONE MARSHALL** ("Borrower") and SunTrust Mortgage, Inc ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated **OCTOBER 19, 2006** in the amount of $**361,600.00** and recorded **NOVEMBER 7, 2006** in Book or Libor **08957**, at page(s) **1215**, of the OFFICIAL Records of **ORANGE COUNTY, FLORIDA** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at:
:

**2764 CABERNET CIRCLE
OCOEE, FLORIDA 34761**
(Property Address)

the real property described being set forth as follows:

SEE ATTACHED SCHEDULE "A"

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **MAY 1, 2015** the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$474,552.68** consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **6.750%**, from **MAY 1, 2015**. Borrower promises to make monthly payments of principal and interest of U.S. **$3,490.42**, beginning on the 1ST day of **JUNE, 2015**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **6.750%** will remain in effect until principal and interest are paid in full. If on **NOVEMBER 1, 2036** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT          Form 3179  1/01 (rev. 04/14)   (page 1 of 7)

If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note and

    (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

    (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

    (f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan.

    For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging ☐.

6. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.

Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower and Lender do each accept and agree to the terms and covenants in this Loan Modification Agreement as of the date first written above.

**BORROWER**

_____
LORENZO J MARSHALL

By _James Messer_
Witness (Print Name): James Messer

By _Cindy Zosel_
Witness (Print Name): Cindy Zosel

State of Florida §
County/City of Orange/Ocoee §

On this the 14th day of March, 2015 before me, (Notary's Name) James Messer, personally appeared (Borrower/Title Holder's Name) Lorenzo Marshall, who is/are personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the above instrument and acknowledged to me that he/she/they executed the same as his/her/their voluntary act and deed.

WITNESS my hand and official seal.
Notary Signature _James Messer_ (Seal)
My Commission Expires: March 13, 2017

[Notary Seal: JAMES MESSER, MY COMMISSION # EE883546, EXPIRES March 13, 2017, (407) 398-0153, FloridaNotaryService.com]

**TITLE HOLDER**

_____
LAVONE MARSHALL

By _James Messer_
Witness (Print Name): James Messer

By _Cindy Zosel_
Witness (Print Name): Cindy Zosel

State of Florida §
County/City of Orange/Ocoee §

On this the 14th day of March, 2015 before me, (Notary's Name) James Messer, personally appeared (Borrower/Title Holder's Name) Lavone Marshall, who is/are personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the above instrument and acknowledged to me that he/she/they executed the same as his/her/their voluntary act and deed.

WITNESS my hand and official seal.
Notary Signature _James Messer_ (Seal)
My Commission Expires: March 13, 2017

[Notary Seal: JAMES MESSER, MY COMMISSION # EE883546, EXPIRES March 13, 2017, (407) 398-0153, FloridaNotaryService.com]

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179  1/01 (rev. 04/14)   (page 5 of 7)

_____[Space Below This Line For Acknowledgement]_____

SUNTRUST MORTGAGE, INC.

_____

SUNTRUST MORTGAGE, INC.    Lender

_____

Date of Lender's Signature

(LENDER'S CORPORATE ACKNOWLEDGMENT)

COMMONWEALTH OF <u>VIRGINIA,</u>
CITY/COUNTY OF <u>RICHMOND,</u> to wit:

I, _____, a Notary Public in and for the said jurisdiction, do hereby certify that this day personally appeared before me in my said jurisdiction,

_____Vice President of SunTrust Mortgage, Incorporated whose name is signed to the foregoing instrument and acknowledged the same before me in my said jurisdiction.

    My commission expires:
    Registration Number

GIVEN under my hand and notarial seal this the _____ day of _____, 20\_\_\_\_.

_____ (Seal)
Notary Public

## SCHEDULE "A"

Lot 42, Vineyards Subdivision, according to the plat thereof as recorded in Plat Book 58, Pages 147-149, Public Records of Orange County, Florida

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT        Form 3179  1/01 (rev. 04/14)   (page 7 of 7)

---

## CORRECTION AGREEMENT

Loan #:      3534

Words used in this agreement are defined below. Words in the singular mean and include the plural and vise versa.

"Borrower" is **LORENZO J MARSHALL**
"Title Holder" is **LAVONE MARSHALL**
"Lender" is SUNTRUST MORTGAGE, INC., and its successors or assigns.
"Loan" means the debt evidenced by the Note and all sums due under the Security Instrument.
"Note" means the promissory note(s) signed by the borrower in favor of Lender.
"Security Instrument" means the Deed of Trust/Mortgage/Security Instrument, signed by the Borrower in favor of the Lender, securing payment of the Note.

Agreement to Correct or Provide Additional Documentation of Fees: In consideration of Lender modifying the original terms of the Loan and regardless of the reason for any loss, misplacement, omission, misstatement or inaccuracy in any Loan documentation, Borrower agrees as follows: If any document is lost, misplaced, omitted, misstated or inaccurately reflects the true and correct terms and conditions of the Modification, upon request of Lender (including and assignee of Lender), Borrower will comply with Lender's request to execute, acknowledge, initial and/or deliver to Lender and documentation deems necessary to replace and/or correct the lost, misplaced, omitted, misstated or inaccurate document(s). If the original Modification is replaced, Lender hereby indemnifies Borrower against any loss associated with a demand on the original Modification. All documents Lender request of Borrower shall be referred to as "Requested Documents". Borrower agrees to deliver the Requested Documents within ten (10) days after receipt by Borrower of a written request of such replacement. Borrower also agrees that upon request Borrower will supply additional amounts and/or pay to Lender and additional sum previously disclosed to Borrower as a cost or fee associated with the Modification, which for whatever reason was not collected at the time of Modification. Borrower does hereby agree and covenant in order to assure that the documentation executed this date will enable Lender to seek insurance or guaranty from the Department of Housing and Urban Development (HUD) or Department of Veteran's Affairs (VA), if applicable, or to conform with and be acceptable to the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC), Government National Mortgage Association (GNMA), or any other investor.

Quality Control Authorization: As part of a continuing effort to assure that all Loan Modifications are completed accordance with the highest standards of professional ethics and business practices, a quality control audit is performed on a random sampling of Modifications each month. As a result of this random sampling, an audit may be performed on your Loan after Modification. During this review, Lender, or its assigns, may reverify employment, deposit, credit standings, loan verification and appraisal reports. Borrower acknowledges that the Loan may be selected as part of Lender's quality control procedure and authorize the reverification of various information supplied in conjunction with obtaining the mortgage. A photocopy of this form shall be regarded as valid as the original for reverification purposes.

Request by lender: Any request under this Agreement may be made by the Lender (including assignees and persons acting on behalf of the Lender) and shall be Prima Facie evidence of the necessity for same. A written statement addressed to Borrower at the address indicated in the Loan Modification shall be considered conclusive evidence of the necessity for Request Documents.

Borrower Liability: If borrower fails or refuses to execute, acknowledge, initial or deliver the Requested Documents or fees to Lender more than ten (10) days after being requested to do so by Lender, Borrower understands that Lender is relying on the representations contained herein and agrees to be liable for any and all loss or damage which Lender reasonably sustains thereby including, but not limited to, all reasonable attorney's fees and cost incurred by Lender.

This Agreement shall survive the closing of the Loan Modification and inure to the benefit of Lender's successor's and assigns and be binding upon heirs, devisees, personal representatives, successors and assigns of Borrower.

_____            _____
LORENZO J MARSHALL                    LAVONE MARSHALL